```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
RICHARD W. HARRIS, JR., EUGENE                              :
MANZIONE, RICHARD HARNEDY,                                  :
PATRICK MCCARTHY and EDWARD                                 :
GOLDMAN, on behalf of themselves                            :    15-CV-7683 (VSB)
and all others similarly situated, and                      :
DONNA DESTRO, individually,                                 :        ORDER
                                                            :
                              Plaintiffs,                   :
                                                            :
               -vs-                                         :
                                                            :
                                                            :
BANK OF AMERICA CORP.; LANDSAFE,                            :
INC.; LANDSAFE APPRAISAL                                    :
SERVICES, INC., and DOES 1-10,                              :
INCLUSIVE,                                                  :
                                                            :
                              Defendants.                   :
                                                            :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/31/2017

VERNON S. BRODERICK, United States District Judge:

  This Order provides my assessment, after my review of the settlement agreement entered into between the parties and supporting evidence, of whether the terms of the settlement agreement are fair, reasonable, and adequate.

### I. **Background**

  On September 29, 2015, Plaintiff Richard W. Harris filed a class action complaint against Defendants Bank of America Corporation and LandSafe, Inc. ("Defendants") alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, ("FLSA") and the New York Labor Law, Art. 19 § 650 *et seq.* ("NYLL"). (Doc. 1.) The complaint alleged that residential real estate appraisers employed by Defendants ("Staff Appraisers") were misclassified as exempt

1

from the FLSA and NYLL wage and hour protections, and thus denied overtime payments. (Doc. 33 (Am. Compl.) ¶¶ 24-31.)  By letter dated March 28, 2016, the parties advised me that a settlement had been reached between Defendants and 123 named and opt-in Plaintiffs.  (Doc. 84.)  On June 21, 2016, Plaintiffs, with Defendants' consent, submitted a joint letter detailing why they believe the settlement reached in this action is fair and reasonable.  (Doc. 92.)  In support of their submission, they submitted the Declaration of Bryan J. Schwartz, (Doc. 93), attaching a copy of the settlement agreement, (*id.* Ex. A), the Declaration of Matthew C. Helland, (Doc. 94), the Declaration of Rachel Bien, (Doc. 95), and the Declaration of Bruce E. Menken, (Doc. 96).  On July 18, 2016, Plaintiffs filed a Supplemental Declaration of Matthew C. Helland, explaining that since the filing of the parties' request for settlement approval, two additional Staff Appraisers had filed consent forms to join the action as plaintiffs, and provided updated calculations to include the new plaintiffs.[1]  (Doc. 98.)  On July 22, 2016, Plaintiffs filed a Second Supplemental Declaration of Matthew C. Helland, providing information for two additional Staff Appraisers and new calculations to account for them, for a total of 127 Plaintiffs to date.  (Doc. 100.)  Finally, on November 29, 2016, Plaintiffs filed a Third Supplemental Declaration of Matthew C. Helland, urging me to rule on the request for settlement approval. (Doc. 101.)

       Parties may not privately settle FLSA claims with prejudice absent the approval of the district court or the Department of Labor.  *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015).  In the absence of Department of Labor approval, the parties must satisfy me that their settlement is "fair and reasonable." *See, e.g.*, *Velasquez v. SAFI-G, Inc.*, 137

---

[1] The Settlement provides that additional Staff Appraisers may opt-in prior to a hearing on settlement approval, up to a cap of 150.  (Schwartz Decl. Ex. A ¶¶ 36-38.)

F. Supp. 3d 582, 584 (S.D.N.Y. 2015).  "A reasonable agreement must 'reflect a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching.'"  *Lopez v. Ploy Dee, Inc.*, No. 15-CV-647 (AJN), 2016 WL 1626631, at *1 (S.D.N.Y. Apr. 21, 2016) (quoting *Mamani v. Licetti*, No. 13-CV-7002 (KMW)(JCF), 2014 WL 2971050, at *1 (S.D.N.Y. July 2, 2014)).  I have independently reviewed the settlement agreement and supporting evidence provided in those submissions to determine whether the terms of the settlement agreement are fair, reasonable, and adequate.  I believe that they are, except with respect to the amount of attorneys' fees sought.  Therefore, Plaintiffs' motion for final approval is granted, but the requested attorneys' fees are reduced for the reasons that follow.

## II.     Legal Standard

To determine whether a settlement is fair and reasonable under the FLSA, I "consider the totality of circumstances, including but not limited to the following factors:  (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion."  *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks omitted); *see also Beckert v. Rubinov*, No. 15 Civ. 1951(PAE), 2015 WL 6503832, at *1 (S.D.N.Y. Oct. 27, 2015).  "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement."  *Xiao v. Grand Sichuan Int'l St Marks, Inc.*, Nos. 14-CV-9063 (RA), 15-CV-6361 (RA), 2016 WL 4074444, at *2 (S.D.N.Y. July 29,

2016) (quoting *Pavon v. Daniel's Bagel Corp.*, No. 15 CV 8376 (LTS) (SN), 2016 WL 3960555, at *1 (S.D.N.Y. July 12, 2016)).

Where, as here, a settlement agreement includes a provision for attorneys' fees, I must "separately assess the reasonableness of plaintiffs' attorney's fees." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013). In FLSA cases, where attorneys' fees are resolved through negotiation, "there is a 'greater range of reasonableness for approving attorney's fees.'" *Wolinsky*, 900 F. Supp. 2d at 336 (quoting *Misiewicz v. D'Onofrio Gen. Contractors Corp.*, No. 08 CV 4377(KAM)(CLP), 2010 WL 2545439, at *5 (E.D.N.Y. May 10, 2010)). "Nevertheless, even in such cases, the Court must carefully scrutinize the settlement and the circumstances in which it was reached, if only to ensure that 'the interest of plaintiffs' counsel in counsel's own compensation did not adversely affect the extent of the relief counsel procured for the clients.'" *Id.* (quoting *Cisek v. Nat'l Surface Cleaning, Inc.*, 954 F. Supp. 110, 110-11 (S.D.N.Y. 1997)). In order to aid in determining the reasonableness of plaintiffs' attorneys' fees, "counsel must submit evidence providing a factual basis for the award [of attorneys' fees]." *Beckert*, 2015 WL 6503832, at *2 (quoting *Wolinsky*, 900 F. Supp. 2d at 336)).

### III. Discussion

#### A. *Settlement Amount*

I first consider the settlement amount. The agreement provides for a gross settlement amount of $7 million. (Schwartz Decl. Ex. A ¶ 46.) Plaintiffs' counsel seek $1,750,000 in attorneys' fees, which represents 25% of the fund. After deducting the proposed attorneys' fees, costs in the amount of $12,036.45, third-party settlement administrator costs of $12,000, and named plaintiff enhancements of $18,000, the settlement would allocate $5,207,963.55 to the

4

127 Plaintiffs.  (Second Supp. Helland Decl. ¶ 3.)  This results in an average net allocation of $41,007.59 per Plaintiff based on a per workweek amount of $275.98.[2]  (*Id.*)  The $5,207,963.55 net recovery for unpaid wages is less than Plaintiffs' estimated damages of $8,380,000, and represents approximately 62% of the full relief to which Plaintiffs' believe they are entitled.

The reduced recovery on Plaintiffs' claims is justified, however, in light of the litigation risks present in this case, which counsel in favor of settlement.  The case settled relatively early in litigation, before discovery and motion practice, and prior to class certification.  As represented by the parties, the principal issue in dispute is whether residential real estate appraisers qualify for various FLSA overtime exemptions, including the "administrative or professional capacity" exception to minimum wage and overtime requirements, 29 U.S.C. § 213(a)(1), and the "highly compensated employees" exemption, 29 C.F.R. § 541.601.  Recently, in *Boyd v. Bank of America Corp.*, Judge David O. Carter of the Central District of California held that a separate class of individuals employed as real estate appraisers by Defendants were non-exempt.[3]  109 F. Supp. 3d 1273 (C.D. Cal. 2015).  The Ninth Circuit has not addressed the issue, nor has any other circuit.  (*See* Doc. 92 at 5.)  Plaintiffs are right to point out, however, that while they were able to successfully argue that real estate appraisers are non-exempt in the *Boyd* litigation, it remains an open question in this Circuit and there is no assurance that they would have achieved the same outcome here.  The parties also dispute the amount of damages, as Defendants would argue that any wage loss would have to be drastically

---

[2] New York Plaintiffs will receive the same amount for each additional week within the applicable NYLL statute of limitations period.  (Doc. 92 at 1.)

[3] Plaintiffs here chose not to opt in to the *Boyd* action under 29 U.S.C. § 216(b) after being given the option to do so.  According to the parties' Joint Letter, the Plaintiffs here decided to pursue their claims in the instant action "after seeing the favorable outcome for the participants in *Boyd*." (Doc. 92 at 6.)  The *Boyd* case eventually settled for $36,000,000, which included attorneys' fees in the amount of $12,000,000 and costs in the amount of $175,528.54.  *See* Order and Judgment Granting Plaintiffs' Motion for Final Approval of Class Action Settlement, *Boyd v. Bank of Am. Corp.*, No. 13-CV-00561-DOC-JPR (C.D. Cal. Jan. 19, 2016), ECF No. 397.

discounted by the fluctuating work week method, 29 C.F.R. § 778.114, dispute the number of hours worked by Plaintiffs, and would assert a good faith defense under 29 U.S.C. § 255. Indeed, settling the case at this early stage allows the parties to avoid those litigation risks.

In addition, settlement also alleviates the costs associated with continued litigation, including the cost of an expert witness to estimate overtime hours, lengthy discovery, and motion practice on issues such as conditional FLSA certification, decertification, summary judgment, and appeals of any merits ruling.

Finally, the proposed settlement also appears to be the product of adversarial, arms'-length bargaining between experienced counsel, and there is no basis for me to believe that there was any fraud or collusion involved in the settlement. Nor are any of the factors that typically "weigh against" approving a settlement present here. *See Wolinsky*, 900 F. Supp. 2d at 336. Therefore, based on the representations of the parties and my own analysis of the totality of the circumstances present here, I find that the settlement agreement appears to be a fair and reasonable resolution of this dispute.

### B. *Service Award*

The settlement agreement's provision of $3,000 for each of the six named plaintiffs, a total of $18,000, representing approximately .26% of the total settlement fund, is "well within the range of service awards recently approved" in FLSA cases in this District. *Mills v. Capital One, N.A.*, No. 14-CV-1937 (HBP), 2015 WL 5730008, at *18 (S.D.N.Y. Sept. 30, 2015) (approving a service award of .52%). Accordingly, I find this service award fair and reasonable.

### C. *Attorneys' Fees*

I next consider the attorneys' fees contemplated in the settlement agreement. The attorneys' fees sought are $1,750,000, exclusive of costs, which represents 25% of the

settlement. Plaintiffs' counsel urge me to award fees based on this percentage of the fund, rather than use the lodestar method, which would yield only $199,815 in fees, according to Plaintiffs' counsel's calculations.

It is within my discretion whether to award attorneys' fees based on either the lodestar method or the percentage of the fund. *See Vasquez v. TGD Grp., Inc.*, No. 14-CV-7862 (RA), 2016 WL 3181150, at *4 (S.D.N.Y. June 3, 2016). "'[T]he trend in this Circuit is toward the percentage method,' although it is for district court to determine 'the appropriate method' in a particular case." *Hyun v. Ippudo USA Holdings*, No. 14-CV-8706 (AJN), 2016 WL 1222347, at *2 (S.D.N.Y. Mar. 24, 2016) (quoting *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)). District courts are also encouraged to "cross-check" the percentage fee requested against counsel's "lodestar." *Hart v. RCI Hosp. Holdings, Inc.*, No. 09 Civ. 3043(PAE), 2015 WL 5577713, at *13 (S.D.N.Y. Sept. 22, 2015) (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)). "It bears emphasis that whether calculated pursuant to the lodestar or the percentage method, the fees awarded in common fund cases may not exceed what is 'reasonable' under the circumstances." *Id.* (quoting *Goldberger*, 209 F.3d at 47). In analyzing the reasonableness of the fee, a court should be guided by the following factors: "(1) counsel's time and labor; (2) the case's magnitude and complexities; (3) the risk of continued litigation; (4) the quality of representation; (5) the fee's relation to the settlement; and (6) public policy considerations." *Thornhill v. CVS Pharm., Inc.*, No. 13 Civ. 5507(JMF), 2014 WL 1100135, at *2 (S.D.N.Y. Mar. 20, 2014) (quoting *Goldberger*, 209 F.3d at 50). Further, because the "adversary system is typically diluted" in attorneys' fees determinations, as defendants have little incentive to challenge the amount of attorneys' fees once a settlement amount is agreed to, I must assess the fee "based on scrutiny of the unique circumstances of each case, and a jealous

regard to the rights of those who are interested in the fund." *Goldberger*, 209 F.3d at 53 (internal quotation marks omitted).

First, I am confident in the quality of representation and do not doubt that counsel worked diligently to settle this matter expeditiously. Indeed, the skill and experience of Plaintiffs' counsel undoubtedly enabled counsel to recognize that the case was a good candidate for early resolution. This case was bound for settlement very early in the litigation process, with the parties requesting a stay pending mediation just five days after Defendants answered the complaint. (*See* Doc. 49.) Rather than litigate the issues discussed above, which would have generated significant attorney time and expense, the parties opted to settle from the outset. Indeed, "[t]here is much to be admired in this approach, which conserves both attorney time and judicial resources." *Lopez*, 176 F. Supp. 3d at 343. However, although there were bona fide issues in dispute, there was somewhat less risk in pursuing this litigation in light of the *Boyd* litigation and given the fact that Defendants had already changed the policy in question. Indeed, while the case presented complexities, the majority of issues overlap with those presented in *Boyd* and Plaintiffs' counsel was already compensated accordingly for its role in that litigation. *See* Order and Judgment Granting Plaintiffs' Motion for Final Approval of Class Action Settlement, *Boyd v. Bank of Am. Corp.*, No. 13-CV-00561-DOC-JPR (C.D. Cal. Jan. 19, 2016), ECF No. 397 (awarding attorneys' fees in the amount of $12,000,000, exclusive of costs).

Plaintiffs' counsel request 25% of the fund. Using the percentage of the fund method, attorneys' fee awards of one third or less are generally accepted in the Southern District, so long as "no other factors suggest that such a fee is unreasonable." *Weng v. T&W Rest., Inc.*, No. 15-CV-08167(PAE) (BCM), 2016 WL 3566849, at *3 (S.D.N.Y. June 22, 2016). It is often appropriate to use the percentage method "where the parties were able to settle relatively early

and before any depositions occurred," as it "avoids the lodestar method's potential to 'create a disincentive to early settlement.'" *Hyun*, 2016 WL 1222347, at *3 (quoting *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 418 (2d Cir. 2010)); *see also Weng*, 2016 WL 3566849 at *4 ("A 'percentage of fund' contingency fee agreement can encourage early settlement of a case, which may, in turn, result in a higher award for counsel than they would achieve under a lodestar analysis. This is not inherently unfair, however, so long as the fee otherwise falls within an acceptable range."). Moreover, public policy counsels in favor of a percentage of the fund awards for wage and hour cases because attorneys' fees in this context "are not meant to compensate plaintiffs, but rather to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Sand v. Greenberg*, No. 08 Civ. 7840(PAC), 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010).

However, the disparity between the requested 25% of the fund and the actual amount of time expended and substantive work performed is quite extreme. In support of the fee request, Plaintiffs' counsel reports that, between the two law firms involved, they expended a total of 533.7 hours, which would have resulted in fees of $199,815. Attorneys and staff at Nichols Kaster billed a total of $130,530 for 386.1 hours of combined work by one partner ($550 per hour), one associate ($350 per hour), and five support staff ($175 per hour). (First Helland Decl. at 9.) Brian Schwartz Law billed $70,095.15 for 147.6 hours of work by one partner ($650 per hour), one associate ($350 per hour), and support staff ($100 and $200 per hour). (Schwartz Decl. at 9.) These rates are higher than the average in this District. *See, e.g.*, *Aguilera v. Cookie Panache ex rel. Beneath the Bread, Ltd.*, No. 13 Civ. 6071(KBF), 2014 WL 2115143, at *3 (S.D.N.Y. May 20, 2014) (reducing rates for class settlement of FLSA and NYLL claims

"[b]ased on the prevailing rates in this district for employment law cases," from $550/hour to $300/hour for partners, $350/hour to $200/hour for counsel, $175-200/hour to $125 for associates, and $125/hour to $75/hour for paralegals); *Carrasco v. W. Village Ritz Corp.*, No. 11 Civ. 7843(DLC)(AJP), 2012 WL 2814112, at *7 (S.D.N.Y. July 11, 2012) ("Courts in this District have determined in recent cases that the range of appropriate fees for experienced civil rights and employment law litigators is between $250 and $450."); *Merino v. Beverage Plus Am. Corp.*, No. 10 Civ. 706(ALC)(RLE), 2012 WL 4468182, at *3 (S.D.N.Y. Sept. 25, 2012) (awarding $450 to $700 for partners, $275 to $300 for associates, $125 for law clerks, and $100 for paralegals). "Although courts in this district have occasionally awarded hourly rates of $550 and $600 to experienced senior litigators, FLSA litigators are rarely awarded over $450 per hour." *Long v. HSBC USA Inc.*, 14 Civ. 6233 (HBP), 2016 WL 4764939, at *8 (S.D.N.Y. Sept. 13, 2016). Plaintiffs cite a number of cases from this District in support of higher rates, but, as explained by Judge Pauley in a recent, well-reasoned decision, "there is reason to be wary of much of the caselaw awarding attorney's fees in FLSA cases in this circuit." *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 436 (S.D.N.Y. 2014). I share his concern that the authority Plaintiffs cite in support of their rates is caused in large part by proposed orders written by the class action plaintiffs' bar and the unopposed nature of FLSA settlements. *See id.* at 436-37.

Even using these higher rates, the requested fee is 8.79 times the lodestar, which I find to be unreasonable.[4] Plaintiffs' counsel contends that "[c]ourts regularly award lodestar multipliers of up to eight times lodestar, and in some cases, even higher multipliers." (Doc. 92 at 19

---

[4] Assuming time in this case were billed at $450 for partners, $250 for associates, and $125 for support staff, counsel's lodestar would be $150,075, and a $1.75 million award would represent an 11.66 multiplier.

10

(quoting *Zeltser v. Merrill Lynch & Co., Inc.*, No. 13 Civ. 1531(FM), 2014 WL 4816134, at *9 (S.D.N.Y. Sept. 23, 2014)). But again, as explained by Judge Pauley addressing this exact sentence, there is "weak support for such lofty multipliers," and "[t]here is little consensus in this district on the appropriate range for lodestar multipliers." *Fujiwara*, 58 F. Supp. 3d at 438 (citing cases); *see also Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 315 (E.D.N.Y. 2015).

Thus, it is not uncommon for courts to reduce multipliers to between 2 and 3 as "sufficient compensation for the risk associated with contingent fees in FLSA cases." *Fujiwara*, 58 F. Supp. 3d at 439 (reducing 30% of fund (3.8 multiplier) to 20% of fund (2.28 multiplier from modified calculation and 1.75 multiplier from stated hourly rates)); *Mills v. Capital One, N.A.*, No. 14 Civ. 1937(HBP), 2015 WL 5730008, at *13 (S.D.N.Y. Sept. 30, 2015) (reducing a 4.41 multiplier of adjusted lodestar figure to 2.21 multiplier or 16.67%); *Long*, 2016 WL 4764939, at *12 (reducing multiplier to 3.10 (10.2%) for "complex" FLSA case); *see also Trinidad v. Pret a Manger (USA) Ltd.*, No. 12 Civ. 6094(PAE), 2016 WL 4670870, at *12 (S.D.N.Y. Sept. 19, 2014) (reducing the requested award of one third of the fund, or 2.64 times the recalculated lodestar amount, to 25% of the fund, or 1.82 times the recalculated lodestar); *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 401 (S.D.N.Y. 2013) (reducing 16.5% of fund (3.9 multiplier) to 12% of fund (2.8 multiplier)); *Flores*, 104 F. Supp. 3d at 315-16 (concluding that no multiplier was warranted and awarding lodestar alone).

The settlement here is similar to the one in *Long*, where counsel estimated the $6,982,000 settlement to represent approximately 68% of the unpaid wages sought, and was executed early in litigation, after only $230,152 worth of work. Here, counsel secured a $7,000,000 settlement, which approximates 62% of the unpaid wages sought. I do not discount the successful

settlement achieved, but "a big recovery does not necessarily justify a quality multiplier," and "a large settlement can as much reflect the number of potential class members of the scope of the defendant's past acts as it can indicate the prestige, skill, and vigor of the class's counsel." *Goldberger*, 209 F.3d at 56.

In light of all the *Goldberger* factors, I find that $500,000 is a reasonable attorney's fee. This amounts to just over 7% of the fund, which is approximately 3.3 times the modified lodestar and 2.5 times counsel's proffered rates.

### D. Costs

Plaintiffs' requested costs of $12,036.45 and third-party settlement administrator costs of $12,000 are well-supported, and I find them fair and reasonable.

### IV. Conclusion

For the foregoing reasons, the settlement agreement is approved. The parties are directed to modify the agreement to reduce the attorneys' fees in accordance with this order, and recalculate the amounts due each Plaintiff.

SO ORDERED.

Dated: January 31, 2017
         New York, New York

Vernon S. Broderick
United States District Judge